ROBERT CLEMENS, Appellee, v. THE CHICACO, ROCK ISLAND & PAC. RY. CO., Appellant.

Railroads: TRESPASSERS: NEGLIGENCE: LAST CLEAR CHANCE: EVIDENCE. The mere fact that one walking upon the right of way of a railway company was a trespasser and had thus voluntarily placed himself within the zone of possible danger will not relieve the company of liability for his injury, if his peril was discovered in time to have avoided the accident by the exercise of reasonable care; but if he knew of an approaching train and of his peril and could by the exercise of reasonable care have removed himself from the zone of danger but failed and neglected to do so, the doctrine of the last clear chance has no application; as any negligence of the railway company would be simply concurrent, for which there would be no liability. In the instant case the evidence is held to require a submission of the question of whether plaintiff failed to exercise reasonable care for his own safety after he knew his peril.

Same: PLEADING: LAST CLEAR CHANCE. Where plaintiff alleged that defendant was negligent in failing to ring the engine bell, blow the whistle or stop the train before it struck him, and the court

held that plaintiff was a trespasser, negligence under the doctrine of the last clear chance in failing to use reasonable care to avoid injuring plaintiff after discovery of his peril was pleaded and the issue was properly submitted.

Instructions: COERCING AN AGREEMENT. Where the jury had deliberated
3    upon the case for fifty hours, the giving of an instruction in effect saying to the minority that if they do not agree with the majority they should doubt the correctness of their own judgments, should scrutinize the evidence more closely and re-examine the ground of their opinion, which was followed by a further deliberation for twenty hours and the return of a verdict, is held to have been prejudicial error and is disapproved.

*Appeal from Appanoose District Court.*—HON. F. M. HUNTER, Judge.

SATURDAY, DECEMBER 13, 1913.

ACTION to recover damages for personal injury, alleged to have been caused by being struck by defendant's train while walking near its tracks. The court held that the evidence showed that the plaintiff was a trespasser at the time he was hurt, and the court submitted the case to the jury on the doctrine of last clear chance. After the jury had been out fifty hours, they were called in and instructed by the court and admonished to get together. After being out twenty hours longer, they returned a verdict for the plaintiff.— *Reversed.*

*J. L. Parrish* and *Robt. J. Bannister,* and *Porter & Greenleaf,* for appellant.

*Wilson & Smith,* for appellee.

GAYNOR, J.—This is an action to recover damages for a personal injury which plaintiff claims to have sustained by being struck by one of the defendant's trains while walking near its track. The cause was submitted to the jury on the

theory of last clear chance.  The court instructed the jury, in substance, that the plaintiff was a trespasser, and had no right to be at the place where he claims he was injured; that he was negligent; and that his negligence contributed to the injuries received; and that this fact denied him the right to recover, for the reason that the defendant did not owe him any duty to either ring the bell, blow the whistle, or have the headlight burning as it approached the point where the plaintiff was, and owed him no duty to slow down the speed, and owed him no duty to discover his position sooner than it actually did discover him; and that its only duty was not to wantonly and wilfully injure him, after discovering his peril; that the defendant's first duty to the plaintiff arose when it discovered him on or near the track and in a place of peril.

The court said to the jury, in substance, that when the defendant discovered the plaintiff in such close proximity to the track that he was liable to be struck by the engine, if he continued walking in such direction, the defendant had a right to presume, in the first place, that he would not so continue in such position, but would leave his place of peril on the approach of the train, but that when it became apparent to the company, through its employees in charge of the train, or by ordinary care it should have become apparent to them, that he did not know of the approach of the train, and that there was danger of striking him, it then became its duty, at once, to exercise ordinary care to avoid the accident, by stopping the train, if it could be stopped before the accident, or by giving the plaintiff such warning or signal of the approach of the train as the evidence shows was at their command, and that if they failed to use such ordinary care, and if the accident would not have occurred had they used such ordinary care, then your verdict should be for the plaintiff.  But if they used such ordinary care, then, even though the accident was not avoided, your verdict should be for the defendant.

The instructions given to the jury, in substance, were

that the plaintiff, at the time when and the place where he was injured, was a trespasser upon the property of the defendant, and that the defendant therefore owed him no duty to discover his presence on or near the tracks, owed him no duty to ring the bell or blow the whistle as a warning to him of the approaching train, and owed him no duty to lessen the speed at which the train was coming until it discovered plaintiff's position of peril; that the plaintiff was negligent in being at the point where he was struck; and that this negligence contributed to the injuries he received; and that he could not recover unless he showed, by a preponderance of the evidence, that, notwithstanding his negligence in being at the point and place where he was struck, the defendant discovered his position of peril for such a length of time before the injury that, by the exercise of ordinary care, it could have prevented the injury—that is, could have warned the plaintiff of the approaching train, so that he might escape from his peril, or could have stopped the train so as to avoid the collision.

The doctrine of last clear chance is predicated on the idea (which is humane, and just in its proper application), that the fact that the plaintiff has negligently placed himself in the place of peril will not defeat recovery,

1. RAILROADS : trespassers : negligence : last clear chance: evidence.

if the defendant discovered his negligence, in so placing himself, for such a length of time before the injury that it could have avoided injuring him by exercising reasonable care. This doctrine presupposes that the plaintiff's negligence was not active, continuing, and concurring negligence, continuing up to the very time of the accident, and concurring therein, but was remote and antecedent. If the plaintiff's negligence is continued, with knowledge of the imminent danger, and so continued up to the time of the accident, if, during the time intervening between the defendant's discovery of his peril and the accident, the plaintiff knew of the approaching train, knew of his own peril, and could, by the exercise of reason-

able care at all times, between the time he was discovered by the defendant and the accident, have removed himself from the place of peril, but negligently failed and neglected to do so, then the doctrine of last chance will not serve him in a suit to recover damages, even though he shows, by the evidence, that the defendant also could, by the exercise of reasonable care, have avoided the injury. The doctrine of last chance presupposes that the defendant has the *last clear chance* to avoid the injury, and is not to be applied in cases where the plaintiff, with knowledge of the approaching danger and its imminence, heedlessly, carelessly, and negligently continues in his position of peril, when he knows escape rests within easy reach of him by the exercise of ordinary care. Then it is that the negligence becomes concurrent, and neither can recover from the other.

There is evidence in this case that the plaintiff knew of his position of peril, and that he was in fact in a position of peril; that he was informed of the approaching train; that an avenue of escape from the peril was open to him by simply stepping aside; and that he failed and neglected to avail himself of it. There was evidence that the train could be, and was, heard distinctly as it approached, for some time prior to the collision. There is no evidence that the plaintiff's hearing was defective, or that his attention was diverted, or that the conditions were such that he could not have heard the approaching train. If this evidence is true (and it was for the jury to say whether it was true or not), the plaintiff miscalculated his chances of being injured in walking where he did, when slight effort on his part would remove him entirely out of the zone of danger.

It will be borne in mind that the plaintiff was not upon the railway track, but walking near it; that there was nothing at any time to prevent him from removing himself outside the zone of possible danger. A railway track, though a signal of danger, and suggestive of danger, from the use to which it is put, involves no danger in itself. The fact that

one is a trespasser upon the track subjected him only to the dangers incident to moving trains. By going upon a track, where he has no right to be, he puts himself within the zone of the danger incident to the use of the tracks. The mere fact that he is a trespasser, the mere fact that he has voluntarily put himself within the zone of possible danger, does not defeat his right of recovery, if the company discovered him in his position for such length of time before the collision that it could, by the exercise of reasonable care, have avoided the collision and the injury. But this rule presupposes that the only negligence to be attributed to him is that found in the fact that he was a trespasser and negligently placed himself in the zone of danger. But if, however, before the injury occurs, even after he has been discovered by the defendant, he becomes aware of the approaching danger, that a train is bearing down upon him, and he has the power to prevent the collision, as in this case, by merely stepping aside, and he negligently fails to avail himself of it, he cannot be heard to complain of the negligence of the other party. Nor can he avail himself of the doctrine of last clear chance.

In *Bruggeman v. Illinois Central Ry. Co.*, 147 Iowa, 187, this court said: ''There is general agreement in the authorities that, where an engineer actually sees a person in a position of danger, and then fails to do what he reasonably can to prevent an accident, the railroad company is held responsible for the resulting injury, irrespective of the question of contributory negligence. If, just before that climax, only one party had the power to prevent the catastrophe, and he neglected to use it, the legal responsibility is his alone. If, however, each had such power, and each neglected to use it, then their negligence was concurrent, and neither can recover against the other.''

In this case, the negligence of the plaintiff, involved in the fact of trespass, the negligence of plaintiff, involved in the fact, that he placed himself within the zone of possible danger, the fact that he negligently continued in the

zone of possible danger, would not, in and of itself, defeat recovery, if the defendant company discovered him in the position, in which he thus negligently placed himself, in time to have prevented injury, by the exercise of reasonable care. That negligence would be, in the words of the books, remote, and could not be charged against him in a suit to recover damages. But where, with knowledge of approaching danger, with knowledge that the danger is imminent, he continues in his position of danger when he has at hand means of escaping therefrom, with little effort (in this case, the mere stepping aside from the track by which he was walking), it cannot be said that the doctrine of last clear chance applies, and there was evidence in the record to justify the submission of this theory to the jury. One cannot knowingly put himself within the zone of possible danger and knowingly remain there, when it is open to him, by the exercise of ordinary care, to remove himself outside the zone of all danger. He cannot knowingly and negligently put himself in the zone of danger and continue there with a knowledge of the approach of impending injury, and with knowledge that to remain in the position in which he has placed himself subjects him to injury from an approaching train, and in so doing trust to the nice balancing of chances as to whether he will be hurt or not.

Thus, much is said in view of the form in which this question was submitted to the jury. It is contended by the defendant that, under the issues tendered, the cause should not have been submitted to the jury on the doctrine of last chance; that such issue was not presented by the pleading. We think otherwise. The negligence charged consisted in a failure to ring the bell and blow the whistle as a warning to the plaintiff of the approaching train, and a failure to stop the train before collision with the plaintiff. The holding of the court that he was a trespasser limited that duty in these respects

2. SAME: pleading: last clear chance.

to a time from and after the discovery of the plaintiff upon the track and his position of peril.

This is clearly distinguishable from the case of *Ford v. C., R. I. & Pac. Ry.*, 106 Iowa, 85, for the reason that the negligence charged there was a failure of the company to erect a safe and sufficient cattle guard at a place where the railroad crossed a public highway. That was the only negligence charged, and clearly the doctrine of last chance was not involved in the issue tendered.

It appears from the record that, after the jury had been out about fifty hours, the jury were recalled into open court, and the court delivered to the jury the following instruction:

This case has been exhaustively and carefully tried by both sides and at considerable expense and has been submitted to you for decision and verdict, not for disagreement. The law requires a unanimous verdict, and while this verdict must be the conclusion of each juror, and not a mere acquiescence of the jurors to reach an agreement, it is necessary for all of the jurors to examine the issues submitted to you with candor and a proper regard and deference to the opinion of each other. A proper regard for the judgment of other men will greatly aid us in forming our own. This case must be decided by some jury, selected in the same manner this jury was selected, and there is no reason to think a jury better qualified would ever be chosen, or that more or clearer evidence would ever be submitted. Every juror should listen to the argument of other jurors with a disposition to be convinced by them, and, if any of the jury differ in their views of the evidence from a larger number of their fellow jurors, such difference of opinion should induce the minority to doubt the correctness of their own judgment and cause them to scrutinize the evidence more closely and to re-examine the grounds of their opinions. Your duty is to decide the issues of fact which have been submitted to you, if you can conscientiously do so. In conferring together, you should lay aside all mere pride of opinion and should bear in mind that the jury room is no place for espousing and maintaining in a spirit of controversy either side of a cause. The aim ever to be kept in

3. INSTRUCTIONS: coercing on agreement.

view is the truth, as it shall appear from the evidence examined in the light of the instructions of the court. You will again retire to your jury room and examine your differences in a spirit of fairness and candor, and try to arrive at a verdict.

After the submission of this instruction to the jury, they retired for further deliberation, and remained out about twenty hours longer, at which time they returned into open court with a verdict for plaintiff. To the giving of this instruction, and to the action of the court in retaining the jury for twenty hours longer, defendant excepted and complains here.

The instruction above quoted is practically taken from, and in all essential elements is the same as, the instruction given in *Armstrong v. James & Co.*, reported in 155 Iowa, 562, and approved by a divided court, Justice Weaver dissenting. The facts in the *Armstrong* case, upon which the conduct of the court in giving this instruction was justified, are essentially different from the facts in this case. In the case at bar, the jury had been out fifty hours before they were called into court and this additional instruction given. They remained out twenty hours thereafter before reaching an agreement, remaining out in all about seventy hours. In the *Armstrong* case, the jury retired on November 15th at 5:45 p. m. and were called into court at 9 o'clock the next morning, at which time the instruction was given; that, thereafter, and on the same day, and at about 11 o'clock, the jury sent in a request to the court for an additional instruction and for more specific definition of duress, that being involved in the controversy. The court prepared an additional instruction defining "duress," and submitted the same to the jury at about 11 o'clock. A few minutes after 12 o'clock, the court directed the bailiff to bring the jury into the courtroom for the purpose of discharging the jury. Whereupon the jury requested that they be given a few minutes longer; that they thought they would agree after lunch; that at about 1:30

they returned the verdict. Much stress is laid in the majority
opinion of the court, in that case, in holding this instruction
not prejudicial error, upon the fact that the jury thereafter
requested additional instruction, and that this fact indicated
that they were considering the merits of the case, and ''had
got at the very vitals of it.''

In the case at bar, there is no competent evidence in the
record to indicate that the jurors, who, after fifty hours' con-
sideration of the evidence, were brought to a final agreement
resulting in a verdict, other than through the coercive influ-
ence of this instruction, and the long hours of involuntary
servitude to which they were subjected, with the tentative
suggestion of longer confinement in the event they failed to
agree. For twenty hours thereafter they were held in bond-
age to this case, with no suggestion of relief except in submis-
sion to the will of the majority, thus forcing the parties to
the suit, by this method, to submit to what practically amounts
to a majority verdict; whereas, in this state, each party is
entitled to have the issues submitted to the jury, determined
by an unanimous verdict and one which contains the intelli-
gent, free, and independent assent of each member of the
panel to its return. Nearly all the cases which have approved
this instruction, or instructions of like import, have gone
very near to the point of inviting the court to enter that
which is the exclusive province of the jury, and such instruc-
tions have been sustained largely upon the ground that, under
the peculiar circumstances of each case, no prejudice could
be presumed to have arisen to the complaining party. To
approve of the acts herein complained of is to overlook the
fact that many men who sit upon the jury are called from
the more active pursuits of life, many accustomed to outdoor
exercise, and that such confinement often entails physical
suffering, to escape from which they may be forced to sur-
render their individual judgment. Fifty hours is a long
time for men, who are accustomed to the outdoor life, to daily
physical exercise, to be confined in a small room, often illy

ventilated. Such confinement, of necessity, has a depressing effect upon them, rendering them incapable of exercising their intellectual faculties to the best purpose. It is wearisome to the body and depressing to the mind. To hold them in confinement for that length of time, to then call them into court and tell them that, if they do not agree with the majority, they should "doubt the correctness of their own judgment," and "should therefore scrutinize the evidence more closely, and re-examine the grounds of their opinion," leads the mind to the more reasonable suspicion that they ceased further resistance, gave up their own convictions, and surrendered to the majority, than that they proceeded thereafter to the laborious and uncertain task of convincing themselves that they were wrong.

The giving of this instruction, at the time when it was given, the holding of the jury together for twenty hours thereafter, cannot be approved, under our practice, where parties to a controversy are entitled, as a matter of fundamental right, to have the issues determined by an unanimous verdict, which has the assent of every member of the panel. It is not the purpose of the trial to secure *a* verdict, but rather *the* verdict of the jury, in all the fullness of the meaning of the word itself, independently and freely assented to by each member of the panel. We think the court was in error in giving this instruction under the circumstances, and that such error was prejudicial to the rights of the litigants.

Some complaint is made of the action of the court in refusing to admit certain testimony, offered by the defendant, tending to show the conduct of the plaintiff at and prior to the time he was injured. This was attempted to be shown by testimony of witnesses who claimed to have observed him at the time, and who attempted to give the results of their observation, and how it appeared to them from their viewpoint. While this evidence somewhat partakes of the nature of conclusions, it is also a fact bottomed on the observation of the witness. For instance, an opinion as to whether a party

slipped; whether a party fell; whether a party staggered; whether a party stepped to the right or to the left; whether he moved in one direction or another—is always competent evidence, when given by a party who is in a position to and did observe the movement. Though not conclusive it is competent, and should have gone to the jury. This matter is considered in *Stokes v. Sac City*, 151 Iowa, 10. See cases therein cited. We think the answers to these questions should have been permitted.

For the error pointed out, the case must be reversed, and is *Reversed.*

WEAVER, C. J., and EVANS, WITHROW, LADD, and PRESTON, JJ., concur.