STATE OF IOWA, appellee, v. HALL ELTON MYERS, appellant.

No. 51679.

(Reported in 140 N.W.2d 891)

Norman G. Jesse, of Des Moines, for appellant.

Lawrence F. Scalise, Attorney General, Don R. Bennett, Assistant Attorney General, Ray A. Fenton, County Attorney, and Jack Harvey, Assistant County Attorney, for appellee.

LARSON, J. — Defendant, a sixty-one-year-old janitor, was convicted of sodomy (fellatio) on a nine-year-old boy. He appeals, urging three errors for reversal.

The principal issue in this case involves the admission into evidence of defendant's statement to summoned officers as they were taking him to the police station for investigation and interrogation. For the reasons which we set out hereinafter, we have concluded the statement was properly admitted and its acceptance was not reversible error.

The State's evidence shows defendant took a nine-year-old boy and his eight-year-old brother into his apartment on June 27, 1964, at about 1 p.m., and performed the act charged on the older boy. The boys notified their grandmother, parents and older brothers of the incident. They called defendant from his apartment and he was "mauled" by the stepfather. The police were called and, when they arrived, the nine-year-old boy identified defendant and in his presence told the police what had happened. The mother testified defendant denied the accusatory statements, but the boy and the officers claimed defendant said nothing. As a crowd gathered, the police placed defendant in the squad car and took him directly to the police station. One of the officers testified that on the way to the station "I asked the defendant how he could explain the boys being in the apartment. He stated that they were in the apartment. * * *."

"Q. Was that the extent of the conversation? As you recall it at that time? A. The defendant objected to being detained. He didn't think he had done anything to go to jail for.

"Q. But he did admit the boys were in his apartment, is that right? A. Yes."

The second officer's testimony was to a like effect, and timely objection to this evidence was made.

I. Defendant contends when he was taken into custody by the police he became an accused, that thereafter he was entitled to advice of counsel, and that he did not waive that right but was effectively deprived thereof when the foregoing question was asked him by the officers on the way to the police-station. He contends the right to counsel attaches as soon as one becomes an accused, extends to all periods of police interrogation when constitutional rights must be intelligently exercised or waived, and does not depend upon a request for counsel. He relies upon Escobedo v. Illinois, 378 U. S. 478, 84 S. Ct. 1758, 12 L. Ed.2d 977, and the cases therein cited; People v. Dorado, 62 Cal.2d 338, 42 Cal. Rptr. 169, 398 P.2d 361; State v. Neely, 239 Ore. 487, 395 P.2d 557; United States ex rel. Russo v. New Jersey, 351 F.2d 429 (1965); People v. Schader, 62 Cal.2d 716, 44 Cal. Rptr. 193, 401 P.2d 665; State v. Turner, Ore., 404 P.2d 187; State v. Dufour, R. I., 206 A.2d 82.

It is clear that until defendant reached the station and was turned over to the detectives for questioning, he was not advised of his right to remain silent or his right to counsel. There was no contention defendant waived any of his constitutional rights. The issue is whether these rights were violated. Thus we face the very controversial issue of when one is entitled to be considered an "accused" so as to bar the admission into evidence of any voluntary statements made to the investigating officers. Reams have been written in opinions and Law Review articles on this subject since the Escobedo decision, and the controversy goes on. See annotation, 1 A. L. R.3d 1251.

Recently in State v. Fox, 257 Iowa 174, 178, 131 N.W.2d 684, 686, we said: "The rule is well settled that one accused of a crime may refuse to answer questions of the police, and, before doing so, is entitled to advice of counsel." However, we held voluntary statements made in response to police questions when defendant's counsel was absent but access to him was not denied, were admissible, especially when no objections thereto were

made. We expressed the view then that Escobedo was limited to its particular facts, which disclosed that Escobedo was accused of the crime of murder and was being extensively interrogated by the relays of officers when his attorney was being excluded and could not advise him. In fact, the United States Supreme Court on at least three occasions said the same thing in Escobedo v. Illinois, supra. In the opinion it said: "The critical question in this case is whether, *under the circumstances*, the refusal by the police to honor petitioner's request to consult with his lawyer during the course of an interrogation constitutes a denial of 'the Assistance of Counsel' * * *." (Emphasis supplied.) The opinion continues: "We hold, therefore, that where, as here, the investigation is no longer a *general inquiry* into an unsolved *crime* but has begun to *focus* on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect *has requested* and *been denied an opportunity* to consult with *his lawyer*, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the *Assistance of Counsel*' * * *." (Emphasis supplied.) The opinion concludes: "We hold only that when the *process shifts* from investigatory to accusatory— when its focus is on the accused and its *purpose is to elicit a confession*—our adversary system begins to operate, and, *under the circumstances here*, the accused must be permitted to consult with *his lawyer*." (Emphasis supplied.)

The statement of the question involved and the pronouncements above clearly disclose the court held only that under these circumstances the accused must be permitted to consult his counsel. In reaching this result the court does say that an accused has a constitutional right to demand counsel when the police investigation becomes accusatory. It then pointed out: "The 'guiding hand of counsel' was essential to advise petitioner of his rights in this delicate situation" and that "This was the 'stage when legal aid and advice' were most critical to petitioner", thus advancing the time formerly considered "critical", i.e., when one is brought before a magistrate as by law provided. For that time in Iowa, see section 755.17, Code, 1962.

In State v. Mabbitt, 257 Iowa 1063, 1070, 135 N.W.2d 525, 530, we held a defendant was not denied the assistance of counsel under Escobedo or of his right to remain silent where, before interrogating him in the absence of counsel, police officers fully advised him of his right to remain silent and that anything he said might be used against him. Also see State v. Tharp, 258 Iowa 224, 138 N.W.2d 78.

There is no suggestion that defendant's statements to the officers here were not voluntary. In fact, in the trial he denied making them. There is no claim of coercion, physically or mentally. Therefore, if defendant's contention is to be upheld, we must hold any statements voluntarily made by one at the time of his arrest when he has not been advised of his constitutional right to remain silent and to have the assistance of counsel, cannot be admitted in evidence in the absence of an intelligent waiver of such rights. This we cannot do, and doubt the correctness of his contention that United States ex rel. Russo v. New Jersey, supra, and People v. Dorado, supra, so hold or that State v. Neely so holds as to the failure to remain silent. In each of those cases a crime had been committed, the investigative efforts of the authorities were focused upon the accused, and the purpose of their lengthy and exhaustive interrogation was to obtain a confession from him. Regardless of the value of these distinctions, most state courts and the United States circuit courts have rejected the view of Escobedo advanced here by appellant. They apply the Escobedo rule only under factual situations comparable to those in the cited cases. Among these states are Illinois, New York, Nevada, Wisconsin, Idaho, New Jersey, Kansas, Minnesota, Missouri, Ohio, Pennsylvania, Texas and New Hampshire.

Furthermore, most state and federal circuit courts have refused to hold that any interrogation of one arrested or suspected of a crime can make no voluntary statement admissible in evidence against him, unless it appears the accused or suspect has first been advised of his right to counsel and to remain silent, and has intelligently waived that right. See United States v. Cone, 254 F.2d 119, decided November 22, 1965, by the Second Circuit Court of Appeals, covering the states of New York, Connecticut and Vermont; People v. Lewis (1965), 32 Ill.2d 391,

946

207 N.E.2d 65; People v. Golson (1965), 32 Ill.2d 398, 207 N.E. 2d 68, 71, and citations. The Illinois Supreme Court, which carefully considered this vital question in the field of police investigation and interrogation prior to arraignment, held the authorities were not under a duty to advise an accused of his right to counsel and of his right to remain silent. Generally, we agree with that conclusion, especially as to voluntary statements made prior to any formal, basic, or purposeful interrogation by trained investigators. Also see People v. Hartgraves, 31 Ill.2d 375, 202 N.E.2d 33; State v. Scanlon, 84 N. J. Super. 427, 202 A.2d 448; People v. Gunner, 15 N. Y.2d 226, 257 N. Y. S.2d 924, 205 N.E.2d 852; Bean v. State, 398 P.2d 251 (Nevada); Browne v. State, 24 Wis.2d 491, 129 N.W.2d 175, 131 N.W.2d 169, 13 L. Ed.2d 706.

Only California, Oregon, and the Third Circuit seem to support appellant's position and, as stated, those cases can be distinguished on the facts. In each the clear purpose of the interrogation was to obtain a confession. Batteries of officers took turns questioning defendants, and in Escobedo the accused's demand to consult his waiting attorney was actually denied. On the other hand, the court in Escobedo was careful to point out at page 492 of 378 U. S., 1766 of 84 S. Ct., and 987 of 12 L. Ed.2d:

"Nothing we have said today affects the powers of the police to investigate 'an unsolved crime', * * * by gathering information from witnesses and by other 'proper investigative efforts.' * * * We hold only that when the process shifts from investigatory to accusatory—when its focus is on the accused and its purpose is to elicit a confession—our adversary system begins to operate, and, under the circumstances here, the accused must be permitted to consult with his lawyer."

Thus, it seems the court was saying that information gathered without physical or mental abuse during a preliminary investigation to determine what happened and whether a charge should be placed against a suspect taken into custody, is admissible, and that it violates no constitutional rights provided by the Bill of Rights made applicable to the states by Amendment 14 to the Federal Constitution. The court was very specific in ex-

cepting a "general inquiry into an unsolved crime" and in designating the critical time when the suspect is entitled to counsel assistance as the time when the police carry out a "process of interrogations" with a "purpose" to elicit a confession.

Even Justice Douglas in his dissent in Crooker v. California, 357 U. S. 433, 441, 78 S. Ct. 1287, 1293, 2 L. Ed.2d 1448, 1455, recognized a period of preliminary interrogation was not included in this extension, for he said when petitioner "was first arrested, and before any *real interrogation* took place, he asked that his attorney be present." (Emphasis supplied.) He pointed out therein why the court felt it was necessary to interpret the constitution to provide counsel before trial, i.e., that would effectively restrain the coercive power of the police but not eliminate the right and duty of the officers to detect and solve crimes. Thus, to accept appellant's view would seriously curtail the latter duty and no doubt leave many additional crimes unsolved.

United States v. Cone, supra, C. A. 2 (en banc), 34 United States Law Week, 2293, 2294, is a stronger case for exclusion than the case at bar. There the facts tended to prove a purposeful interrogation of one in custody suspected of a crime. The court held a post-arrest confession that custom agents elicited during a brief, noncoercive, sidewalk interrogation of a suspected narcotics smuggler, about whom they had received information from other suspects, was not rendered inadmissible by their failure to advise him of his right to counsel or his right to remain silent. There, as here, the suspect argued at the time the statements were made that he had become the "target" of the investigation and, since the purpose of the questioning was to elicit an incriminating statement, his response under the rule of Escobedo v. Illinois, supra, could not be used against him. However, the court pointed out that an inculpatory statement given voluntarily under circumstances that did not create any feeling that the suspect was compelled to answer on pain of suffering physical or psychological mistreatment would not violate any constitutional right of the defendant in the absence of a warning of his rights. Only one judge dissented. Also see Kennedy v. United States (D. C. Cir.), 353 F.2d 462.

 An extended discussion of Escobedo and review of the

many authorities considering the application of the Sixth Amendment made applicable to the states by the Fourteenth Amendment would at this time serve no useful purpose. See 49 Minnesota Law Review 47 (1964) ; 73 Yale Law Journal 1000 (1964) ; 76 Harvard Law Review 1516 (1963). We are satisfied the most that can be claimed for Escobedo is that the critical period when an accused is entitled to counsel's aid was moved forward to the time when the interrogation ceased to be investigatory and the purpose thereof was to obtain a confession. We do not believe that time had arrived in the case at bar.

Here the circumstances do not reveal a stage where a proper investigation by the officers had been transformed into an accusatory or adversary proceeding. To say the single question asked by the officer en route to the station was a "grilling" would seem farfetched. To say the purpose of that question was to obtain a confession, that the suspect had abused the boy is also not justified. It was clearly a question seeking information as to what had happened and to learn whether there was any substance to the child's complaint. The fact that it did get a response which might be against appellant's interest is not the controlling factor here. The question was pertinent to an investigation as to whether a crime had been committed. There was not the slightest hint of abuse or coercion attached to it. The accusatory stage had not been reached until he was interrogated at the police station, and at that time it is not denied he had been advised of his rights. The inquiry then was general and the evidence was admissible.

We do not read the recent Supreme Court holdings in Massiah v. United States, 377 U. S. 201, 84 S. Ct. 1199, 12 L. Ed.2d 246, Escobedo v. Illinois, supra, and others, far-reaching as they are in excluding voluntary utterances, to render inadmissible all statements made by an uncounseled person in custody. Since these cases are not controlling on the facts shown in this record, we need deal with them no further.

II. Appellant also contends the court committed reversible error in giving Instruction No. 12 as follows:

"There has been introduced in this case on the part of the State of Iowa evidence by witnesses to the effect that the

defendant, Hall Elton Myers, remained silent when confronted with an accusatory statement or statements arising out of the alleged facts on which the charge herein is based, and you have heard the testimony of the defendant as to this evidence introduced by the State of Iowa.

"Under the law of this State if a person is accused of the crime at such a time and under such circumstances that a normal and reasonable person of similar age and experience and under such circumstances would deny any guilt, if that person chooses to remain silent upon being so accused, such silence may be considered along with all other evidence in determining the guilt or innocence of the defendant.

"Before you may consider such evidence in the present case, if you find that in fact such incidents did take place, you must find beyond a reasonable doubt that the defendant, Hall Elton Myers, had knowledge of the accusatory nature of the alleged statements and at said time or times a normal and reasonable person of similar age and experience would have denied said accusatory statements and that the said defendant, Hall Elton Myers, did not deny said accusatory statements. If you so find, you may give such evidence such weight as you may determine it to be entitled. Otherwise not."

This case was tried before the recent United States Supreme Court opinion in Griffin v. California, 380 U. S. 609, 85 S. Ct. 1229, 14 L. Ed.2d 106, where it was held that Amendment 5 was by virtue of Amendment 14 made applicable to the states. Thus, the constitutional question involved was not presented to the trial court. Nevertheless, the defendant contended reversible error was committed in giving the instruction on silence, that he had reserved his objections and exceptions to the instruction and presented them in his written motion for a new trial, and that it was erroneously overruled. While it occurs to us these objections and exceptions were not timely, we do note the present contention that "the instruction as a whole gave undue prominence to and called special attention to testimony concerning whether or not the appellant denied the accusatory statements made by the complaining witness * * * allegedly in the presence of the appellant, * * *." He admits there was some evidence of

conduct in the record to sustain that issue and admits no objection was made to it when offered or now. We find no merit in this complaint.

■■. It has been repeatedly held in this State that the admission of testimony as to the conduct of a defendant when first accused of a crime is not objectionable. State v. Johnson, 221 Iowa 8, 19, 264 N.W. 596, 267 N.W. 91; State v. Benson, 230 Iowa 1168, 1171, 300 N.W. 275; State v. Beckner, 197 Iowa 1252, 1258, 198 N.W. 643; State v. Middleham, 62 Iowa 150, 151, 17 N.W. 446; State v. Pratt, 20 Iowa 267, 269, 270. We have held that, while the weight to be given this evidence is slight, it is the jury's function to value it in view of all other circumstances. State v. Pratt, supra. A fact of importance here is whether the defendant heard and understood the accusation. State v. Middleham, supra.

Prior to the Griffin decision the Iowa Supreme Court had discussed and approved the propriety of an instruction that stated an inference that the accusations were true when one remained silent or failed to testify. See State v. Nicola, 169 Iowa 171, 151 N.W. 70. Subsequent to the Griffin case we have held on at least three occasions that an instruction was erroneous which told the jury that if the defendant fails to exercise his right to take the stand in his own behalf, his failure to do so may be considered as an inference of guilt. State v. Johnson, 257 Iowa 1052, 135 N.W.2d 518; State v. Beshears, 258 Iowa 389, 138 N.W.2d 886.

Amendment 5 to the Federal Constitution provides that "No person shall be * * * compelled in any criminal case to be a witness against himself, * * *."

Clearly the Griffin case forbids comment by the prosecution on the accused's failure to testify, or instructions by the court that if defendant does not take the stand to deny or explain facts within his knowledge, the jury must take that failure into consideration as tending to indicate the truth of such evidence.

While the question raised herein is somewhat akin to that settled in the above-mentioned cases, it must be remembered the objectionable feature to be avoided is the compulsory self-incrimination. Griffin v. California, supra, 380 U. S. at 614,

85 S. Ct. at 1233, 14 L. Ed.2d at 110. Thus, the violation of Amendment 5 by any previous permissible comment rule, regardless of its source, was barred because "It cuts down on the privilege by making its [right to remain silent] *assertion* costly." (Emphasis supplied.)

However, we think the situation presented here is very different from that in the Griffin and Johnson cases. Under the admitted testimony there was a jury question as to whether the accused heard and understood the boy's accusations, and whether he made any reply. His own testimony thereon is not clear. Since there was evidence from which the jury could find that the defendant heard and knew the charge made against him by the boy and that he remained silent, the instruction was not erroneous. Unless the given instruction by its wording is violative of Amendment 5, the court did not err in giving it. We do not find it so. On the other hand, it would seem to defendant's advantage to have such an instruction given to prevent any jury speculation or indulgence in improper inferences due to the testimony. Instruction No. 12 accomplished that purpose and permitted the jury to consider evidence of silence or conduct in connection with other circumstances, and to give it only such weight on the issue of guilt or innocence as the circumstances would justify, which in this case was a hostile crowd and a recent mauling. The instruction as given, in effect, barred any presumption or inference of guilt due to his silence, and still allowed its consideration.

Since this instruction did not penalize appellant for his failure to speak out, we find no error in this assignment. In any event, we feel the instruction as given was not so prejudicial as to require a reversal of the case.

III. Appellant's third assignment contends the court erred in giving an additional "get together instruction", and that it had the effect of forcing a verdict not based upon the merits of the case.

From the record we learn this case was submitted to the jury on November 19, 1964, at about 2:10 p.m. Some twenty hours later at 10:48 a.m. the jury was recalled and an additional instruction given. The jury again retired and about 41 minutes

later at 11:29 a.m. a verdict was returned. We have examined carefully the additional instruction as given and do not find therein any error. Nor do the facts surrounding the giving of the additional instruction and the return of a verdict indicate any abuse of the court's discretion or prejudicial effect on the jury. In the recent case of Coulthard v. Keenan, 256 Iowa 890, 897, 898, 129 N.W.2d 597, 601, we set out the general rules governing the propriety of just such an instruction, saying:

"We have said the ultimate test of the propriety of a verdict-urging instruction is whether it forced or helped to force an agreement, or merely started a new train of real deliberation which ended the disagreement. Also that where the jury's disagreement is of more than ordinary and usual duration and, after giving of a verdict-urging instruction, a verdict is reached in a short time in comparison with the duration of the disagreement, a presumption arises that the instruction was prejudicial."

See also State v. Barlow, 242 Iowa 714, 46 N.W.2d 725; In re Estate of Cocklin, 232 Iowa 266, 5 N.W.2d 577; State v. Bogardus, 188 Iowa 1293, 176 N.W. 327, and citations. Compare Clemens v. Chicago, R. I. & P. Ry. Co., 163 Iowa 499, 144 N.W. 354, and State v. Peirce, 178 Iowa 417, 159 N.W. 1050.

Here the court told the jury that "Each juror should listen to the arguments of other jurors with a disposition to be convinced by them; and if the members of the jury differ in their views of the evidence, such difference of opinion should cause them all to scrutinize the evidence more closely and to reexamine the grounds of their opinion."

This is not the situation passed on in the Coulthard case where the jury had been out eleven and one-half hours. There an oral verdict-urging instruction had been given, and within some five or six minutes a verdict was returned. Here it appears ample time had elapsed to avoid any presumption that the jury did not follow the instruction properly. It was not disclosed how the jury stood before the instruction, but there was ample time for the jury to reexamine its approach to the issue, to consider the new approach, and to arrive at an agreed and adequately-

considered verdict. See State v. Barlow, supra. There was no reversible error in this assignment.

IV. Having carefully considered the contentions and authorities of able counsel for appellant, we are convinced the case should be affirmed.—Affirmed.

GARFIELD, C. J., and SNELL, MOORE and STUART, JJ., concur.

THORNTON, MASON, RAWLINGS and BECKER, JJ., dissent.

THORNTON, J.—I respectfully dissent.

My disagreement with the majority opinion is in each of the following: 1) That it fails to fully give to a person the constitutional rights embodied in Amendment 5 to the United States Constitution, "No person * * * shall be compelled in any criminal case to be a witness against himself," the right to remain silent, and in Amendment 6, "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence.", 2) it fails, as I conceive our duty to be, to apply the Constitution of the United States as interpreted by the Supreme Court of the United States and 3) it gives an erroneous and misleading effect to our statutory provisions incident to arrest.

The disagreement as to 1 and 2 above is a matter of degree, the majority recognizes the rights do exist but holds the rights do not arise until a much later time than I believe a person becomes entitled to them, not only as interpreted by the Supreme Court of the United States, but as they must have been rationally intended at the time of the adoption of the Bill of Rights in 1791.

I. In considering the right to remain silent and the right to counsel it should be remembered they were adopted by a revolutionary people determined to secure the Blessing of Liberty to themselves and their posterity. These people were aware of governmental and police abuses. It cannot reasonably be thought these rights depend on actual assertions or do not arise until they have been lost. Nothing less should be attributed to the Congress and the state legislatures that ratified the Bill of Rights than the intention the right to the assistance of counsel meant the right to counsel at all critical times or times when the as-

sistance of counsel could be of benefit, and than the intention the right not to be compelled in any criminal case to be a witness against himself be meaningful and the assertion thereof not made costly. Certainly they did not intend a vain thing.

II. To put this case in its proper perspective it is necessary to consider 3) above first. The right of a police officer to arrest a person without a warrant is found in section 755.4, Code, 1962:

"A peace officer may make an arrest * * * without a warrant: * * * 3. Where he has reasonable ground for believing that an indictable public offense has been committed and has reasonable ground for believing that the person to be arrested has committed it."

Section 755.1 defines arrest, "Arrest is the taking of a person into custody when and in the manner authorized by law, * * *."

Section 755.2 provides in part, "An arrest is made by an actual restraint of the person to be arrested, or by his submission to the custody of the person making the arrest. * * *."

Section 758.1 provides, "When an arrest is made without a warrant, the person arrested shall, without unnecessary delay, be taken before the nearest or most accessible magistrate in the county in which the arrest is made, and the grounds on which the arrest was made shall be stated to the magistrate by affidavit, subscribed and sworn to by the person making the statement, in the same manner as upon a preliminary information, as nearly as may be."

One under arrest may make a phone call without unnecessary delay after arrival at the place of detention and an attorney is permitted to see and consult with him in private under section 755.17.

From the stories told to the officers by the two small boys the police officers had reasonable grounds for believing an indictable public offense had been committed and defendant had committed it. If they did not they had no authority to arrest him. The indictable offense contained in what was told them was sodomy, section 705.1. The officers did not have the authority to arrest defendant and charge him with "investigation to detec-

tives" as one of them stated or as appears to be condoned in the second paragraph of the majority opinion, "* * * as they were taking him to the police station for investigation and interrogation." This statement also condones a violation of section 758.1 by the officers. Nor do the facts warrant the statement in the third paragraph of the majority opinion, "As a crowd gathered, the police placed defendant in the squad car and took him directly to the police station." Though there is no suggestion the crowd, some 15 or 20 people, were friendly to defendant, there is likewise no suggestion the crowd in any manner acted to harm defendant. The "mauling" by the stepfather had ceased by that time. In fact if any person had attacked defendant it would have been the officers' duty to arrest them. Section 755.4(1). There was no thought on the part of the officers to protect defendant from the crowd.

The only authority vested in the police was to arrest defendant and to proceed in conformity with statute. They have no authority under any statute or constitutional provision to hold a person for investigation. They must proceed according to statute and he cannot be held unless he is charged with a crime.

The record in this case does not warrant a finding defendant was not under arrest for sodomy when questioned by the officers in the police car. The sum total of the officers' testimony warrants of no other conclusion except they intended to book him for "investigation to detectives." There is no such crime and no authority for such. It is appropriate to call to mind the words of Chief Justice Warren speaking of involuntary confessions in Spano v. People of the State of New York, 360 U. S. 315, 320, 321, 79 S. Ct. 1202, 1205, 1206, 3 L. Ed.2d 1265, 1270, "* * * the deep-rooted feeling that the police must obey the law while enforcing the law; that in the end life and liberty can be as much endangered from illegal methods used to convict those thought to be criminals as from the actual criminals themselves."

III. The State concedes the defendant had become an accused. The officers testified defendant was not free to go and that he was under arrest. If the statutory procedure is followed a man under arrest has become an accused. Otherwise he should not be arrested. For the majority to say the defendant had not

become an accused is to disregard the statutes quoted above on arrest and to close one's eyes to the record. Officer D'Ostillio testified on direct examination the boy told him what happened and,

"Q. I will ask you whether or not you' then placed Mr. Myers under arrest? A. We placed him in the patrol car and talked with him before we placed him under arrest."

On voir dire examination: "Q. Had you not at that time heard the testimony of the people at the scene and at that time did you not consider that to constitute an act of sodomy? A. Yes, I had cause to believe that the acts had been committed.

"Q. Did you not tell the defendant that he would have to come with you or to the station with you at that time? A. Either myself or Officer Lamb did.

"Q. Was the defendant free to walk away at that time? A. No.

"Q. He had been placed under detention? A. Yes."

Officer Lamb testified on direct examination as follows:

"Q. I will ask you whether or not the defendant was placed in the police car and placed under arrest at that time? A. Yes, he was. * * *."

On cross-examination: "Q. Did you have any other suspects in this case, Mr. Lamb? A. No."

It is clear from the knowledge of the officers and the evidence later produced at the trial that the investigation had begun to focus on the defendant. The pages written by the majority to show the inquiry was general have no rational basis. There was no one else upon whom the investigation could focus. This was not a crime where the criminal was unknown. There may have been, and undoubtedly was, a question whether a crime had in fact been committed, but that does not mean as to this defendant the inquiry was general. He had been accused and arrested based on that accusation. See People v. Treloar, 49 Cal. Rptr. 100, 410 P.2d 620; People v. Brooks, 48 Cal. Rptr. 879, 410 P.2d 383, 387; and annotation, 5 A. L. R.3d 1309.

IV. The next step was the interrogation. The majority says it must be prolonged or abusive or its purpose must be to obtain a confession or to obtain an involuntary confession. That

is not what the Supreme Court said in Escobedo v. State of Illinois, 378 U. S. 478, 84 S. Ct. 1758, 12 L. Ed.2d 977.

The majority apparently by adding emphasis senses a difference between "incriminating statements" and "a confession." In the quotation from Escobedo "confession" is emphasized but not "incriminating statements." The apparent reason for this is, this case involves an incriminating statement and not a confession. If the majority opinion is valid it should so hold as to both.

Part of the opinion in Escobedo quoted in the majority opinion is as follows:

"We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' * * *."

There is no question the Supreme Court equates incriminating statements and confessions. In this context they amount to the same thing.

The quotation above and the one that follows as quoted by the majority point out the accusatory stage—the investigation is no longer a general inquiry, but had begun to focus on a particular suspect, the suspect has been taken into police custody and the police carry out a process of interrogation that lends itself to eliciting incriminating statements or its purpose is to elicit a confession—at that point the court says our adversary system begins to operate.

What the court has done is point out when a suspect is entitled to counsel, when the investigation is no longer a general inquiry but has begun to focus on a particular suspect and the interrogation lends itself to eliciting incriminating statements. Then the suspect is entitled to counsel. He then must be effectively warned of his constitutional right to counsel, of his right to remain silent and that anything he says will be used against

958.

him. See State v. Mabbitt, 257 Iowa 1063, 1070, 135 N.W.2d 525, 530; and Payne v. United States, 340 F.2d 748 (9 Cir. 1965).

His right to counsel does not depend on a request. This is made clear in Carnley v. Cochran, 369 U. S. 506, 513, 82 S. Ct. 884, 889, 8 L. Ed.2d 70, 76. There the Supreme Court said, "But it is settled that where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend on a request." Mr. Justice White in his dissent in Escobedo so states at page 495 of 378 U. S., page 1767 of 84 S. Ct., page 988 of 12 L. Ed.2d:

"The Court now moves that date back to the time when the prosecution begins to 'focus' on the accused. Although the opinion purports to be limited to the facts of this case, it would be naive to think that the new constitutional right announced will depend upon whether the accused has retained his own counsel, cf. Gideon v. Wainwright, 372 U. S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799; Griffin v. Illinois, 351 U. S. 12, 76 S. Ct. 585, 100 L. Ed. 891; Douglas v. California, 372 U. S. 353, 83 S. Ct. 814, 9 L. Ed. 2d 811, or has asked to consult with counsel in the course of interrogation. Cf. Carnley v. Cochran, 369 U. S. 506, 82 S. Ct. 884, 8 L. Ed.2d 70. At the very least the Court holds that once the accused becomes a suspect and, presumably, is arrested, any admission made to the police thereafter is inadmissible in evidence unless the accused has waived his right to counsel."

It is true the Supreme Court limited the decision to the facts. That is what was being decided. There was no need to say a request for counsel was not necessary. There was in fact a request. And the question had previously been laid to rest in Carnley v. Cochran, supra.

V. Was the question asked of the defendant one that lends itself to eliciting incriminating statements? It was. The officer testified, "I asked the defendant how he could explain the boys being in the apartment. He stated that they were in the apartment." Like the time honored, "Have you stopped beating your wife?" this question assumed the incriminating fact that the boys were in the apartment. To say this question was not a process of interrogation that lends itself to eliciting incriminating statements is to deny reality. It had no other purpose. Similar ques-

tions, whether he went to the Star Market to commit robbery, whether he displayed his gun to the cashier, and whether he fired at the man who pursued him, were condemned in People v. Ketchel, 63 Cal.2d 859, 48 Cal. Rptr. 614, 409 P.2d 694; and People v. Brooks, 48 Cal. Rptr. 879, 410 P.2d 383, 387.

The defendant was entitled to counsel at that point. He was also entitled to be advised of his right to counsel, his right to remain silent, and that anything he said would be used against him. And, as has been pointed out, his right to counsel did not depend on a request. This was the critical stage stated in Escobedo. See pages 485, 486 of 378 U. S., page 1762 of 84 S. Ct.

By the admission in evidence of the statement attributed to defendant he was not only denied the right to counsel but the right to remain silent.

The majority opinion overlooks Carnley v. Cochran, 369 U. S. 506, 82 S. Ct. 884, 8 L. Ed.2d 70. It insists the defendant must request counsel and the request be denied. It seems the Carnley case should be considered. The Supreme Court was interpreting the Constitution in that opinion too. And, I might add, quite differently from the majority of this court.

VI. The majority opinion makes the exercise of his right to remain silent costly when it approves the instruction, "* * *, such silence may be considered along with all other evidence in determining the guilt or innocence of the defendant." It is, of course, true that the authorities so far have only held such an instruction deprives a person of his constitutional right when he has failed to testify at his trial. But if the right means anything, and a constitutional right should, its exercise should be protected and not made costly whether it was exercised before or at the trial. In this instance the right is asserted here while on direct review. It is timely. State v. Barton, 258 Iowa 924, 140 N.W.2d 886, and authorities cited therein.

In conclusion, we should adopt a rule of this court, and I predict it will be forced upon us, if we do not, excluding all "jail evidence" unless counsel for the accused is present, or until section 755.14 or section 758.1, Code, 1962, are fully complied with and the accused has been advised by the magistrate of his right to counsel, section 761.1, his right to remain silent and that

anything he says will be used against him. This would eliminate the type of controversy we have here and insure every person, guilty or innocent, of the full enjoyment of his constitutional rights. This, of course, would require the police to obey the law while enforcing it. It would require them to use proper investigation methods. And proper investigation does not mean continued interrogation until the desired answer is obtained as indicated in the majority opinion.

As sustaining this view see United States ex rel. Russo v. New Jersey, 351 F.2d 429; State v. Neely, 239 Ore. 487, 395 P.2d 557; People v. Dorado, 62 Cal.2d 338, 42 Cal. Rptr. 169, 398 P.2d 361, certiorari denied 381 U. S. 937, 85 S. Ct. 1765, 14 L. Ed.2d 702; People v. Ketchel, 63 Cal.2d 859, 48 Cal. Rptr. 614, 409 P.2d 694; and Meaning and Scope of Escobedo, by Hon. Robert Van Pelt, United States District Judge, District of Nebraska, before the Judicial Conference of the Eighth Circuit, 38 F. R. D. 441.

I would reverse the case for a new trial.

MASON, RAWLINGS and BECKER, JJ., join in this dissent.