STATE of Iowa, Appellee,

v.

Gene James JIRAK, Appellant.

No. 91–636.

Court of Appeals of Iowa.

Aug. 27, 1992.

Linda Del Gallo, State Appellate Defender, and Patricia Reynolds Lapointe, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Bruce Kempkes, Asst. Atty. Gen., Karl Knudson, County Atty., and Sherry Raduenz, Asst. County Atty., for appellee.

Considered by SCHLEGEL, P.J., and HAYDEN and SACKETT, JJ.

SCHLEGEL, Presiding Judge.

The defendant, Gene Jirak, appeals his conviction for operating while intoxicated, first offense. Jirak argues the district court erred in: (1) denying defendant's motion for mistrial based on the deputy sheriff's testimony Jirak remained silent after being read his *Miranda* rights; and (2) failing to grant defendant's motion for mistrial based on the deputy sheriff's opinion regarding the defendant's intoxication.

On October 7, 1990, at approximately 2:15 a.m. Deputy Sheriff Bill Sires observed Jirak driving near a four-way stop. Sires observed the defendant stop fifteen to twenty feet past a stop sign and later make a right turn without signaling. After observing no front license plate on defendant's car, but observing the rear license plate was properly displayed, Sires activated his red lights and stopped Jirak.

At trial, Sires testified: (1) Jirak was belligerent when stopped; (2) Jirak told Sires he did not have his license with him; (3) Jirak would not answer when asked his name; (4) Jirak braced himself against both the side and the trunk of Jirak's car as he walked alongside the car; (5) Jirak appeared to have very bloodshot, watery eyes and slightly slurred speech; and (6) Jirak's breath smelled strongly of alcohol.

Sires further stated he found both an unsealed bottle of vodka one-fourth full with a missing bottle cover and a twelve pack of beer containing two open beers on the front passenger floor of Jirak's car. Sires asked Jirak to perform field sobriety tests. Jirak refused. Sires then arrested Jirak. Two other men in the Jirak car identified Jirak and stated the two of them had been drinking. Jirak was read his *Miranda* rights and placed in the back of a squad car. Jirak refused to answer any questions on the way to the police station.

At the police station, Sires read Jirak the implied consent advisory. Jirak would not answer. Sires asked Jirak if he wanted to contact his attorney, but again Jirak did not answer. When Jirak stated he would not take the intoxilyzer test, Sires shut off

the intoxilyzer machine and again read Jirak his *Miranda* rights. Sires got no response from Jirak. At trial, Sires testified Jirak gave no response after being read his *Miranda* rights.

On appeal, Jirak argues the trial court erred in denying his motion for mistrial after Sires was allowed to testify Jirak remained silent after being read his *Miranda* rights. Jirak maintains his fifth amendment rights were violated. In addition, Jirak contends the trial court should have granted a mistrial after Sires gave his opinion Jirak was under the influence of alcohol at the time he was operating his motor vehicle. Jirak argues this question was for jury determination.

Trial courts have considerable discretion in ruling upon motions for mistrial, since they are present throughout the trial and are in a better position than the reviewing court to gauge the effect of the matter in question on the jury. *State v. Cage,* 218 N.W.2d 582, 586 (Iowa 1974). The trial court's ruling on such a motion will not be set aside except upon a clear showing of abuse of discretion. *State v. Staker,* 220 N.W.2d 613, 617 (Iowa 1974). Ordinarily, abuse of discretion is found upon the denial of a mistrial only where there is no support in the record for the trial court's determination. *State v. Lewis,* 391 N.W.2d 726, 730 (Iowa App.1986) (citing *State v. Brewer,* 247 N.W.2d 205, 211 (Iowa 1976)).

Additionally, a mistrial motion must be made when the grounds therefor first become apparent. In *State v. Gibb,* 303 N.W.2d 673, 678 (Iowa 1981), the court stated:

Proper preservation of alleged errors committed by [the] trial court in the introduction of evidence at trial ordinarily requires timely objections, raised at the earliest time the error becomes apparent. *State v. Reese,* 259 N.W.2d 771, 775 (Iowa 1977); *State v. Boose,* 202 N.W.2d 368, 369 (Iowa 1972); *see State v. Steltzer,* 288 N.W.2d 557, 558 (Iowa 1980). A motion to strike is not a useless gesture because it aids [the] trial court in understanding the nature of the error claimed and provides an opportunity for the court to correct any error committed. *Reese,*

259 N.W.2d at 775. Generally, a mistrial motion must be made when the grounds therefor first become apparent. *State v. Gilmore,* 259 N.W.2d 846, 852 (Iowa 1977); *State v. Ware,* 205 N.W.2d 700, 702 (Iowa 1973).

Having carefully reviewed the transcript of evidence and, in particular, the direct examination of Deputy Sires, we hold the alleged evidentiary errors asserted by Jirak were not properly preserved for appellate review.

Like the defendant in *Gibb,* Jirak contends Sires's testimony concerning Jirak's silence after being read his *Miranda* warnings impermissibly penalized Jirak for exercising his fifth amendment right to remain silent. An examination of the record reveals, however, Jirak did not object to this evidence until after it had already been discussed extensively. During the State's direct examination of Sires, the subject of Jirak's silence had been explored several times before Jirak's counsel lodged an objection. The first time Jirak's silence was discussed, the following exchange took place:

Q: And you took the Defendant in your patrol car then after arresting him? A: Yes, I did. When I got back in the vehicle, I immediately read him his Miranda Warnings and then my passenger and I drove back to Decorah.

Q: Tell the jury what the Miranda Warnings are that you read him? A: Just tells him what all of his rights are. That he has the right to remain silent and anything he says can and will be used against him. Tells him he has a right to an attorney.

Q: Okay. Did the Defendant indicate that he understood those rights? A: He didn't say anything.

Q: He didn't say anything to you? A: No. He did not.

Q: Did you ask him whether or not he was in fact Gene Jirak? A: I asked him on the way back if he was and he didn't answer me at all.

Q: He wouldn't indicate to you whether or not that was his name? A: Cor-

rect. He wouldn't say whether he was or was not.

The second time Jirak's silence was mentioned during the State's direct examination of Sires, the discussion proceeded as follows:

Q: What did he say when you asked him to sign the refusal test? A: He wouldn't acknowledge I had spoken to him. He just sat there.

The subject was discussed a third time during the same direct examination when the following conversation took place:

Q: Do you recall how many times you requested a specimen from him? A: I asked him twice whether he would be willing to give me the test. Two or three times.

Q: And what was his response? A: First time no answer. Second time probably no answer. And the third time is when I was going through the checklist or I asked him or he volunteered the information that he wasn't willing to.

Q: As far as you knew, did he understand what you were asking for that night? A: I asked him whether he understood everything and he refused to answer. I explained it again. I asked him and he refused to answer.

The fourth time the subject was explored, it arose in the following context:

Q: I'll hand you what has been marked as State's Exhibit three. Would you identify that, please? A: Yes. That is the sheet I fill out and read to him.

Q: This states his rights; is that correct? A: Yes, it did.

Q: Okay. And did he state that he understood his rights? A: No answer again.

Q: You asked him if he understood his rights? A: Yes, I did. No answer.

Q: He didn't say yes or no? A: Correct.

Q: Do you know whether or not he could hear you? A: I assume he could. He carried on a conversation before this.

Jirak's counsel objected and requested a mistrial later in the direct examination of Sires only after the jury had already heard this extensive evidence concerning Jirak's silence. The motion for mistrial was untimely. In addition, the portion of Sires's testimony which followed Jirak's objection and motion for mistrial was cumulative to the evidence already heard by the jury in that the testimony described Jirak's conduct when first accused. Jirak waived the right to appeal the trial court's ruling on his motion for mistrial by failing to raise the motion in a timely manner.

█ However, even if the issue of Sires's testimony concerning Jirak's silence had been correctly preserved, such testimony is proper and does not constitute error. The court in *State v. Myers*, 258 Iowa 940, 140 N.W.2d 891 (1966), stated:

It has been repeatedly held in this state that the admission of testimony as to the conduct of a defendant when first accused of a crime is not objectionable. *State v. Johnson*, 221 Iowa 8, 19, 264 N.W. 596, 267 N.W. 91 [1936], [*vacated on other grounds*, 393 U.S. 253, 89 S.Ct. 436, 21 L.Ed.2d 415 (1968)]; *State v. Benson*, 230 Iowa 1168, 1171, 300 N.W. 275 [1941]; *State v. Beckner*, 197 Iowa 1252, 1258, 198 N.W. 643 [1924]; *State v. Middleham*, 62 Iowa 150, 151, 17 N.W. 446 [1883]; *State v. Pratt*, 20 Iowa 267, 269, 270 [1866]. We have held that, while the weight to be given this evidence is slight, it is the jury's function to value it in view of all other circumstances. *State v. Pratt*, supra. A fact of importance here is whether the defendant heard and understood the accusation. *State v. Middleham*, supra.

*Myers*, 258 Iowa at 950, 140 N.W.2d at 897. (Dates added.)

In *Pratt*, the defendant was convicted of larceny following testimony which tended to show the defendant, when arrested, was charged with the theft and made no reply. There was no objection to this evidence at the time, and a jury instruction was requested to the effect that such testimony could not be used against the defendant. The Iowa Supreme Court answered:

It seems that there was testimony tending to show that the prisoner, when arrested, was charged with the theft and

made no reply. To this proof there was no objection at the time; but an instruction was asked to the effect that such testimony "could not be used against him." This was refused, and very properly. The objection could not regularly nor properly be raised in this manner nor at this stage of the proceedings. Then, again, while this character of proof is often entitled to but little weight, there is no rule justifying its entire exclusion. Its value is to be determined by all the circumstances, of which the jury are the peculiar judges. One person may be so confused or embarrassed, so completely taken by surprise by the unexpected and sudden arrest and charge, as, though ever so innocent, to act in a manner strongly indicative of guilt. And yet, another man, cool and self-possessed, may be able at once to command the entire situation, and though the most hardened villain, disarm suspicion and impress those around with his innocence. All these and other circumstances are to be considered. But the fact that he was charged and made no reply or denial, may properly be shown, the effect thereof being left to the jury. (Citations omitted.)

*Pratt*, 20 Iowa at 269–70.

Furthermore, in *State v. Holt*, 261 Iowa 1089, 156 N.W.2d 884 (1968), the court stated:

For over 100 years it has been the law of Iowa that it is proper to show a defendant's conduct, demeanor, voluntary statements and attitude toward the crime, if there was one. See cases reviewed in *State v. Benson*, 230 Iowa 1168, 300 N.W. 275. There have been times in our law when it was permissible for a prosecutor to comment to the jury on a defendant's failure to testify. In earlier periods, and now, such is not the case.... When the *Benson* case was decided it was permissible for a prosecutor to comment on the defendant's failure to testify. Such is no longer the law.... However, the comment in *Benson*, loc. cit., 230 Iowa at 1171, 300 N.W. at 277, is [still] pertinent:

"Of course, when one is accused of a crime, he does not have to reply to the accusation. But if he declines to reply, his act of silence may be shown to the jury...."

Where constitutional requirements as to warnings, etc. have been met as in the case before us there is a difference between showing what defendant did and said when arrested and comment[ing] to a trial jury on failure to testify.

*Holt*, 261 Iowa at 1093–94, 156 N.W.2d at 886.

■ Next, Jirak argues the trial court erred in denying his motion for mistrial after Sires was permitted to give his opinion concerning Jirak's intoxication while operating his motor vehicle. This motion too was untimely. By the time Jirak made the motion for mistrial, Sires had already testified earlier he believed Jirak was intoxicated:

Q: How long did you observe—Approximately how long of a span of time was it that you observed the Defendant? A: Probably fifteen, sixteen minutes. Somewhere in there.

Q: Okay. During that time, did you form an opinion as to the defendant's sobriety? A: Yes, I did. It was my opinion he was intoxicated.

Q: What was that opinion based on? A: Both on the odor, the way he carried himself and presented himself, speech—slurred speech and the eyes.

■ Because Jirak's motion for mistrial based on Sires's testimony regarding Jirak's intoxication was untimely, the issue was not preserved for appellate review. However, even if the issue had been properly preserved, Deputy Sires's opinion that Jirak was in an intoxicated condition while driving his car is admissible. *State v. Jenkins*, 203 Iowa 251, 212 N.W. 475 (1927); *State v. Fahey*, 201 Iowa 575, 207 N.W. 608 (1926); *State v. Kendall*, 200 Iowa 483, 203 N.W. 806 (1925); *Ewing v. Hatcher*, 175 Iowa 443, 154 N.W. 869 (1916); *McDermott v. Hawkeye Commercial Men's Ass'n*, 158 Iowa 544, 139 N.W. 472 (1913); *State v. Huxford*, 47 Iowa 16 (1877).

Because Jirak did not raise his objections and motions for mistrial when the alleged errors first became apparent, we hold the alleged errors were not properly preserved for appellate review. However, even if the contested issues would have been preserved, this record is absent any abuse of the trial court's discretion.

AFFIRMED.