# IN THE COURT OF APPEALS OF IOWA

No. 20-0253
Filed May 12, 2021

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**CHARLES ANDREW TEWES,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Dickinson County, David C. Larson,

Judge.


        Charles Andrew Tewes appeals his conviction for eluding.  **AFFIRMED.**


        Jack Bjornstad of Jack Bjornstad Law Office, Spirit Lake, for appellant.

        Thomas J. Miller, Attorney General, and Sharon K. Hall, Assistant Attorney

General, for appellee.


        Considered by Doyle, P.J., and Tabor and Ahlers, JJ.

**AHLERS, Judge.**

Charles Andrew Tewes was convicted of eluding a law enforcement vehicle following a jury trial. He appeals, claiming the district court abused its discretion in failing to grant his motion for mistrial based on the State's attempts to introduce evidence of Tewes's prior bad acts when such evidence had been ruled inadmissible via a pretrial order in limine. While not enamored with the prosecutor's repeated questioning on topics addressed by the order in limine, lack of prejudice causes us to conclude the district court did not abuse its discretion in denying Tewes's mistrial motion.

## I.     Factual Background

On May 22, 2018, Tewes was driving a pickup southbound out of Milford on a four-lane divided highway. A Milford police officer observed Tewes driving. The officer was familiar with Tewes and confirmed Tewes's license to drive was suspended. The officer activated the lights on the officer's patrol vehicle to initiate a traffic stop for driving under suspension. When Tewes did not respond, the officer activated the patrol vehicle's sirens as well. While Tewes did not accelerate or take any evasive action, he failed to respond to the lights and sirens for nearly two miles before abruptly pulling onto the shoulder and skidding to a stop.

Based on Tewes's failure to stop coupled with the officer's past experiences with Tewes, which caused the officer to believe Tewes could be violent, aggressive, and uncooperative, the officer called for backup. Backup arrived about the same time Tewes finally pulled over, and the two officers conducted a "felony stop." They ordered Tewes out of the vehicle with his hands up while both officers aimed firearms at Tewes. Tewes argued with the officers using profanity before

eventually exiting the vehicle with a dark object in his hand. The officers ordered Tewes to face away from them and to walk backward toward them. Tewes complied with those commands, but he had to be repeatedly told to face away from the officers. The officers then ordered Tewes to get on his knees and then "on his face." Tewes was again slow to respond and was claiming confusion as to what he was being asked to do while still clutching the object in his hand. In response, the second officer used his foot to push Tewes face down on the ground, and the officer ripped the object out of Tewes's hand after unsuccessfully trying to kick it out. It turned out the object was a cell phone. Tewes was handcuffed and placed in the first officer's patrol vehicle for transport to the jail. During the ride to the jail, Tewes engaged in a steady stream of one-sided chatter directed at the arresting officer, to which the officer did not respond other than to answer Tewes's questions about the charges against him.

All of the above-described events were captured on body and/or dash camera audio and video recordings.

## II.     The Charges and Trial

As relevant to this appeal, Tewes was charged with eluding in violation of Iowa Code section 321.179(1) (2018), which, in pertinent part, states:

> The driver of a motor vehicle commits a serious misdemeanor if the driver willfully fails to bring the motor vehicle to a stop or otherwise eludes or attempts to elude a marked official law enforcement vehicle driven by a uniformed peace officer after being given a visual and audible signal to stop. The signal given by the peace officer shall be by flashing red light, or by flashing red and blue lights, and siren.

Prior to trial, Tewes secured an order in limine prohibiting the State from introducing evidence or questioning "about defendant's criminal history."

However, in response to the State's stated intention to submit a dash camera video and audio recording that had been redacted to remove parts that "bear no relevance to the probative matter of whether the crime of eluding was committed," Tewes objected and insisted that the recording be submitted and displayed to the jury in its entirety.[1]

Based on Tewes's insistence that any recording be admitted in total, the State admitted the dash camera recording into evidence and played the entire recording to the jury. The recording did not cast Tewes in a favorable light. Tewes was generally disrespectful to the officer and regularly mocked him. He repeatedly made provocative statements that appeared to be designed to bait the officer into responding, but he was unsuccessful. He made a derogatory comment about the physique of a random female pedestrian they encountered near the jail. Finally, and perhaps most important to the issues at hand, Tewes made repeated references to being arrested multiple times, including for an assault, and described multiple people having a restraining order against him, all of which was evidence the jury may not have heard but for Tewes's insistence that it be shown to the jury.

After the dash camera recording had been played to the jury, the prosecutor asked the following questions of the arresting officer:

> Q: Do you know anything about Mr. Tewes's history that would make you take more care in stopping the vehicle? A: Yes, I do.
> DEFENSE COUNSEL: Objection.
> THE COURT: Sustained.
> Q: Why did you feel that you needed to use force during the stop of this vehicle? A: Because of his previous actions and just his general demeanor.
> Q: And what do you know that to be? A: He's always aggressive.

---

[1] Tewes's trial counsel was not the same as appellate counsel.

Q: Okay. Can you give us any specific examples?  A: As in interactions that I've had with him?

Q:  Yes.  A: I mean, just calls where he just doesn't want to cooperate with you.  I don't—I don't really—

After changing to other topics, the prosecutor returned to the topic of Tewes's past:

Q: Tell the jury why you called for backup.  A: Because just past dealings and knowing his past, just knowing what he's done.

Q: Okay.  And can you elaborate on that any further than what you already have?  A: I don't know.  Can I?

Q: I believe it came out in the video even though it's inaudible.  A:  Okay.  Shooting an ethanol plant with a—

DEFENSE COUNSEL: Objection.

THE COURT: Sustained.

Q: I think the original question was why did you call for backup.  We'll go back to that.  A: It's always safer to have two cops there than one.

The State was apparently not dissuaded by the sustained objections because, when the second officer testified, the following exchange occurred:

Q: Why was so much care taken or why were weapons used during the arrest of Mr. Tewes?  A: Well, any time you're—like I said before, every traffic stop is an unknown.  It is an unknown risk.  And let's say, for instance, if you have someone that you have pretext with that may—I don't know.  Let's say feloniously used a gun in a crime at some point.  You're—you would be heightened a little bit further than that.  You would take more care in what you're doing if you are dealing with some event like that.

At the next break in the trial, Tewes moved for a mistrial "based on the State's introduction of prior bad acts of Mr. Tewes shooting up an ethanol plant after being objected to and sustained moments earlier for trying to introduce prior bad acts."  The prosecutor resisted the motion for mistrial, arguing Tewes had agreed to allow all of the dash camera recording—including the discussion of

Tewes shooting an ethanol plant—to be admitted into evidence and shown to the

jury.[2]  The district court denied the motion for mistrial, stating:

> The mistrial, I would overrule that on two grounds.  One, the video that came into evidence, although the quality was real poor, it was already in there, the part that was in evidence.  That's not something that was really focused on one way or another.  You could barely tell it on the video.  I'm not sure that the video was sufficient enough for the jury to catch the wording at all on the in-car video.  The body camera, that was a little bit better.  And the jury has already been admonished not to consider any testimony where the court sustained the objection and told them not to consider that or make any conjecture what the evidence might be following an objection.  Plus it was such a minor time, I don't think even the whole question was answered or the answer got out before the objection was made and sustained on that.  In any event, I don't find any prejudice from that one statement, plus the fact that it's cumulative.

At the close of the evidence, Tewes renewed his motion for mistrial on the

same grounds, while noting the fact the arresting officer asked if he could talk about

Tewes's history before answering suggested he knew he was not supposed to be

telling the jury about it.  The district court again denied the motion, stating:

> On the mistrial, I don't find any prejudice.  It's cumulative as to what was on the tape even though it probably wasn't even heard by most of the jurors on the tape.  Some of them may have heard it.  It could be discussed in the jury room.  [The arresting officer] did ask if it was okay to answer that, which maybe heightened the jury's awareness of what the answer was going to be or called some attention to it.  But I still don't think that it was a major point or that it prejudiced the defendant.  And they've already been admonished to not consider evidence that was objected to and sustained on the objection.

---

[2] After closely listening to both the dash and body camera recordings, we cannot discern any reference to an ethanol plant or a shooting of the plant.  The only reference to a shooting we can discern is when Tewes mocks the arresting officer, who apparently had been involved in a prior on-duty-related shooting, thanking the officer for not shooting him and saying Tewes knew how itchy the officer's trigger finger can get.

During closing argument, the prosecutor played only a portion of the video of the recording of the eluding incident and made the following comments as it relates to the issues on appeal:

> The best evidence was this video that was just seen. The rest of the video that you were made to watch does not have anything to do with the crime of eluding. You may not have liked what the officers had to do to take the defendant into custody, but they have explained to you why they did it. It was a matter of officer safety. They knew of this gentleman before this incident. They felt that the manner of the arrest was appropriate for the conditions that day. . . . We've seen it time and time again where these officers are putting themselves in harm's way in order to protect us.
> The officer explained why they arrested him in the manner that they did. You should not be considering that in your verdict today.

The jury found Tewes guilty of eluding, and he was sentenced.

## III.    Analysis of the Issues

Tewes seeks a new trial on the ground the district court erred by denying his motion for mistrial after the State introduced evidence about Tewes's past bad acts and crimes in violation of the order in limine and the prior sustained objections.

### A.    Error Preservation and Standard of Review

The State raises an error-preservation issue, asserting Tewes did not make the motion when the asserted ground for a mistrial first became apparent, as required to preserve error. *See State v. Gibb*, 303 N.W.2d 673, 678 (Iowa 1981) ("Generally, a mistrial motion must be made when the grounds therefor first become apparent."). While we note there may be merit to the State's assertion, we choose to bypass the error-preservation issue and address the claim on its merits. *See State v. Taylor*, 596 N.W.2d 55, 56 (Iowa 1999) ("We choose to pass Taylor's serious preservation-of-error problems and affirm on the merits.").

We review denial of a motion for mistrial for an abuse of discretion. *State v. Plain*, 898 N.W.2d 801, 811 (Iowa 2017).

**B.    Discussion**

As previously noted, the district court denied Tewes's motion for mistrial and in doing so made several observations and findings. As quoted above, the district court noted: (1) at least one of the questions alleged to have been the basis for the mistrial motion resulted in a sustained objection before the arresting officer completed the answer; (2) the topic of the questioning at issue was cumulative, as it had already been heard by the jury via the arrest recordings that had been played in their entirety; and (3) the jury had already been admonished to not consider answers to questions to which objections had been made and sustained. The district court noted the questioning at issue was not a major point and did not prejudice Tewes. As a result, the district court denied the motion for mistrial and the renewed motion.

Tewes asserts the district court abused its discretion because two of the underpinnings of its conclusion leading to the denial of Tewes's motion were wrong. Specifically, Tewes argues (1) the district court's recollection that a sustained objection cut off part of the arresting officer's answer was incorrect and (2) the district court's recollection that the jury had been admonished to disregard answers to questions that had drawn a sustained objection was incorrect because no admonition appears in the record.

As to Tewes's first argument, the record rebuts his claim. As quoted above, Tewes made two objections related to the issue at hand and both times they were sustained. One of the objections was sustained in mid-answer, resulting in the

arresting officer not completing the answer. Granted, the part that did come out made reference to "shooting an ethanol plant." However, given the fact the objection interrupted the answer, we do not know whether the witness and the attorney were talking over each other, as there is no meaningful way for the court reporter to demonstrate overlapping speech in the transcript. This is one reason why there is so much deference to the discretion of the district court, as the district court is in a much better position to gauge such events and their impact on the jury than we are. *See State v. Jirak*, 491 N.W.2d 794, 796 (Iowa Ct. App. 1992) ("Trial courts have considerable discretion in ruling upon motions for mistrial, since they are present throughout the trial and are in a better position than the reviewing court to gauge the effect of the matter in question on the jury.").

As to Tewes's second point, we acknowledge that the admonition given to the jury was not included in the record, so we do not have the exact wording of it, but we know an admonition was given, as the district court repeatedly reminded the jurors of it at breaks. The district court and the attorneys would have been present to hear the admonition given so would be in the best position to know the terms of the admonition. The district court referred to the admonition as having included a direction to disregard any answer that drew a sustained objection as part of the court's basis for denying the mistrial motions. Presumably, this was an accurate statement of the admonition, as it drew no objection or comment from either attorney. If the court's description of the admonition was not accurate, as is now being claimed on appeal, then it was defense counsel's obligation to call that mistake to the district court's attention at that time so corrective measures could be taken. We will not presume error. *See State v. Cook*, 330 N.W.2d 306, 313

(Iowa 1983) ("We do not presume error."); *State v. McFarland*, 287 N.W.2d 162, 164 (Iowa 1980) ("To adopt appellant's argument would have the effect of a presumption that error occurred at trial and would place the burden upon the State to disprove it.  However, there is a presumption of regularity in trial proceedings.").

Finding no merit to Tewes's challenges to the underpinnings of the district court's rulings on his motion for mistrial, we turn to the heart of the ruling itself. The theme of Tewes's complaint is the State tried to introduce evidence of Tewes's past bad or criminal acts and the district court abused its discretion in not granting a mistrial as a result.   However, to show an abuse of discretion by the district court in denying a motion for mistrial, the defendant must show prejudice that prevented the defendant from having a fair trial.  *State v. Callender*, 444 N.W.2d 768, 770 (Iowa Ct. App. 1989).  Here, Tewes cannot make such showing. Remember, Tewes insisted on playing the dash camera video and audio recording in its entirety.  That recording included Tewes admitting past charges for assault, multiple past arrests, and multiple people having restraining orders against him. Given Tewes's insistence that the jury hear this evidence, we are not persuaded Tewes's trial became unfair by the jury hearing partial and incomplete references about an ethanol plant shooting incident.  Any smearing of Tewes's character had already been done effectively by Tewes himself.  Additionally, we note, as quoted above, the State's closing argument focused primarily on the facts supporting the eluding charge and specifically directed the jury's attention to those facts rather than the events surrounding Tewes's arrest.

**IV.    Conclusion**

It was inappropriate for the State to delve into Tewes's past behavior in violation of the pretrial order in limine.  However, given Tewes's trial strategy of insisting that the jury hear the entire recording of Tewes's interaction with the arresting officer, including Tewes's admissions of past bad acts and crimes, the State's questioning about another incident did not prejudice Tewes's right to a fair trial.  In short, we find no abuse of discretion in the district court's denial of Tewes's motion for mistrial.

**AFFIRMED.**