# IN THE COURT OF APPEALS OF IOWA

No. 22-1432
Filed February 7, 2024


**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**ANTHONY JAMES STOCK Sr.,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Jeffrey D. Bert, Judge.


The defendant appeals his convictions for first-degree burglary, first-degree robbery, conspiracy to commit a forcible felony, and going armed with intent, challenging the sufficiency of the evidence underlying the convictions and the district court's denial of his motion for a mistrial. **AFFIRMED.**


Adrienne Loutsch of Benzoni & Maffitt Law Office, P.L.C., Des Moines, (until withdrawal), and Kent A. Simmons, Bettendorf, for appellant.

Brenna Bird, Attorney General, and Thomas E. Bakke and Nicholas E. Siefert, Assistant Attorneys General, for appellee.


Considered by Greer, P.J., and Ahlers and Buller, JJ.

**GREER, Presiding Judge.**

Anthony Stock Sr. challenges his convictions for first-degree burglary, first-degree robbery, conspiracy to commit a forcible felony, and going armed with intent, asserting there was not sufficient evidence underlying the convictions and the district court abused its discretion in denying his motion for a mistrial. We affirm.

**I. Background Facts and Prior Proceedings.**

We provide some of the underlying facts from a companion case—the appeal of Stock's co-defendant, Thomas Deitrick, from their joint criminal trial:

> In January 2022, Shon Johnson and Kevin Bryant moved in with [Stock]; they both informally agreed to pay Stock money from monthly government benefits they were receiving as rent. When Stock demanded the entire checks as their payments came due, they left Stock's home and relocated to a motel room. Johnson and Bryant intended to hide out at the motel as they heard that Stock was going to rob them.
> Around 2:00 a.m. on February 2, [2022,] Deitrick's paramour called Johnson to say she and Deitrick were on their way over to complete a drug transaction. Bryant knew Deitrick and Stock were friends and was anxious that Stock would find out where he and Johnson were, but Johnson assured Bryant they were safe. Deitrick knocked at the door and announced himself. Recognizing Deitrick's voice, Bryant looked through the peep-hole, saw no one, and opened the door. Wearing masks [and with their hoods up], both Deitrick and Stock entered in what Bryant described as a choreographed entrance "like military." Bryant testified that he let Deitrick into the room, but both he and Johnson testified they would not have done so had they known Stock was with him. Stock entered holding a wooden bat with nails on the end, described as a "billy club." Carrying the club, Stock approached Bryant, who recognized Stock by build and voice when Stock asked, "Where's my money?" Stock and Deitrick then approached Johnson, and Stock asked him the same question. Feeling that things were about to get confrontational, Bryant ran out of the room. Stock hit Johnson with the club before Johnson also ran from the room. Johnson sustained a cut to his arm from blocking the blow from the club.
> Johnson ran to the front desk area and called 911. Footage from the motel's video surveillance, entered as evidence, shows both

Deitrick and Stock with their faces covered standing to the side of the door as they wait to enter, entering the room, chasing after Bryant and Johnson as they leave, and then entering the room again. Bryant testified his wallet—including his social security disability debit card—and prescription medication were gone after Deitrick and Stock left.

*State v. Deitrick*, No. 22-1430, 2023 WL 5093307, at *1 (Iowa Ct. App. Aug. 9, 2023); *accord id.* at *2–3 (finding sufficient evidence supported Deitrick's convictions and affirming).  In the surveillance footage, Stock is carrying the billy club in his hand as he approaches the room and then leans against the hallway wall—away from the peep-hole—while Deitrick knocks on the door.  In audio from the 911 call, Johnson twice names Stock and says that he "came in with a baseball bat" with Deitrick, hit Johnson with the baseball bat, and "they were trying to rob us."  Stock was charged via trial information with first-degree burglary, a class "B" felony, in violation of Iowa Code section 713.3 (2022); first-degree robbery, a class "B" felony, in violation of section 711.2; conspiracy to commit a forcible felony, a class "C" felony, in violation of section 706.3(1); and going armed with intent, a class "D" felony, in violation of section 708.8.  He was also charged as an habitual offender pursuant to sections 902.8 and 902.9(1)(c); Stock stipulated to being an habitual offender.

In July 2022, Stock was tried jointly with Deitrick.  Prior to trial, Stock moved in limine to exclude any evidence of "the Defendant's previous convictions," which the district court granted.  At trial, both Bryant and Johnson testified.  Bryant stated that he originally moved out of Stock's house because he heard that Stock was going to rob him and that he and Johnson did not owe Stock any money.  Bryant was working on renovating Stock's center bedroom but "wasn't done yet.  [Stock]

didn't have the money to finish it because he was in jail." Bryant also testified that he did not give Stock permission to enter the motel room on February 2 and, after entering, when Stock left, he took Bryant's wallet and Xanax. When asked to identify Stock, Bryant pointed to Stock and named him as "Anthony—Anthony Stock." After Bryant finished testifying, Stock moved for a mistrial based on the "jail" statement, and the district court denied the motion.[1]

Johnson testified that Stock wanted his entire government benefits check, which is why he stopped staying with Stock after three weeks. Johnson also stated that he recognized Deitrick and Stock by their appearance and their voices when they asked for "my money" on February 2. According to Johnson, Stock "faked like he was going to hit me with a bat but didn't, and then, I took off. . . . [A]nd as I am going out the door, then, he swung and I got hit in the elbow, and I went out the door." Johnson first identified Stock in the courtroom as wearing a tie but then agreed with the district court's correction that Stock did not have a tie on. At the State's request, the district court admitted screenshots from body camera footage of the injury to Johnson's arm along with screenshots from the admitted motel surveillance video of Deitrick and Stock approaching the motel room with masks covering their noses and mouths and the hoods on their jackets up.

The jury found Stock guilty as charged. The district court sentenced Stock to twenty-five years of imprisonment on the conviction for first-degree burglary, twenty-five years of imprisonment on the conviction for first-degree robbery, and

---

[1] Deitrick made a second motion for a mistrial based on testimony given by a member of law enforcement that he reviewed mug shots and located some of Deitrick. Stock joined the motion, and the district court denied it. This issue was not developed in this appeal.

fifteen years on the conviction for going armed with intent. The court ordered Stock to serve all of the sentences concurrently for a total term of imprisonment of twenty-five years.[2] The conviction for conspiracy to commit a forcible felony conviction merged into the convictions for first-degree burglary and first-degree robbery. Stock appeals.

**II. Standard of Review.**

We review the sufficiency of the evidence supporting convictions for correction of errors at law. *State v. Crawford*, 974 N.W.2d 510, 516 (Iowa 2022). We affirm when the verdict is supported by substantial evidence, meaning "the quantum and quality of evidence is sufficient to 'convince a rational fact finder that the defendant is guilty beyond a reasonable doubt.'" *State v. Banes*, 910 N.W.2d 634, 637 (Iowa Ct. App. 2018) (citation omitted). In conducting our review, we "consider[ ] the evidence in the light most favorable to the [verdict], including all reasonable inferences that may be fairly drawn from the evidence." *Id.*

We review a ruling on a motion for mistrial for an abuse of discretion. *State v. Phanhsouvanh*, 494 N.W.2d 219, 222 (Iowa 1992).

**III. Analysis.**

Stock raises two arguments on appeal. First, related to all four convictions, Stock asserts that there was not sufficient evidence that he intended to commit a felony, theft, or assault; that he did not have a right to be in the motel room; and that he intended to use a dangerous weapon. Then, he challenges the denial of

---

[2] These sentences were also ordered to run concurrently to Stock's five-year sentence for interference with official acts involving a dangerous weapon in case FECR422469.

his motion for a mistrial after, he alleges, a witness's testimony violated the court's ruling on the motion in limine.

**A. Sufficiency of the Evidence.**

**1. First-Degree Burglary.** Because unchallenged jury instructions become the law of the case for purposes for our review of sufficiency of the evidence, *State v. Schiebout*, 944 N.W.2d 666, 671 (Iowa 2020), to find Stock guilty of first-degree burglary, the jury had to conclude:

> 1. On or about the 2nd day of February, 2022, in Scott County, Iowa, [Deitrick] and/or [Stock] entered or broke into a motel room at [the motel].
> 2. The motel room was an occupied structure as defined in Instruction No. 30.
> 3. One or more persons were present in the occupied structure.
> 4. The defendant or defendants did not have permission or authority to enter or break into the motel room.
> 5. The motel room was not open to the public.
> 6. The defendant or defendants did so with the specific intent to commit a theft therein.
> 7. During the incident the defendant or defendants:
> a. Possessed a dangerous weapon; or
> b. Intentionally or recklessly inflicted body injury on [Johnson].

Stock challenges the evidence supporting the element that he or Deitrick entered the motel room with the specific intent to commit a theft and contests proof of the element that he did not have permission to enter the motel room.

Starting with the position he did not intend to commit a theft at the time he entered the motel room, Stock argues that he entered the room with the intention to collect the rent that Bryant and Johnson owed him.[3] But there is no "claim-of-

---

[3] Stock also claims there is insufficient evidence he entered the motel room with the intent to commit an assault, but this is not an element of first-degree burglary as defined for the jury, so we do not consider this argument. Insofar as Stock means to suggest the jury was improperly instructed, that issue has not been

right" defense to a charge other than theft, and it is not a defense to the charges Stock was facing here. *See* Iowa Code § 714.4 (codifying the claim-of-right defense and stating that "[n]o person who takes, obtains, disposes of, other otherwise uses or acquires property, is guilty of *theft*" (emphasis added)); *see also State v. Miller*, 622 N.W.2d 782, 785 (Iowa Ct. App. 2000) ("The express terms of section 714.4 provide that it is only a defense to a theft charge. Burglary and robbery are not included."); *State v. Buchanan*, No. 17-0695, 2018 WL 3913671, at *6 (Iowa Ct. App. Aug. 15, 2018) ("[T]his court found this 'claim-of-right' defense was only available for a charge of theft . . . ."). And the law "does not condone the invasion of the sanctity of another's home to regain property rights[ ] when viable legal channels exist to effect a remedy." *Miller*, 622 N.W.2d at 787; *see also Buchanan*, 2018 WL 3913671, at *8 (collecting cases that follow *Miller*).

Additionally, Stock maintains that because no cash was taken from Bryant and because Johnson testified neither his wallet nor any other personal property was taken, the evidence shows Stock did not have the specific intent to commit a theft. However, this argument ignores Bryant's testimony that his wallet—including a debit card—and prescription pills were taken. A theft *did* occur—even if not the exact theft Stock and Deitrick may have originally had in mind. And that they ultimately took different items or goods than they possibly intended does not impact Stock's guilt; first-degree burglary requires only that he had the specific intent to commit the theft—whether the attempt was ultimately successful is not

---

preserved for our review. *See State v. Davis*, 951 N.W.2d 8, 16 (Iowa 2020) ("We have repeatedly held that timely objection to jury instructions in criminal prosecutions is necessary in order to preserve any error thereon for appellate review." (citation omitted)).

determinative.  *See State v. Redmon*, 244 N.W.2d 792, 798 (Iowa 1976) (noting an intruder's intent at the time of the breaking and entering is the issue and the fact the intruder failed to complete a theft due to the quick arrival of the police does not negate the specific intent element).

Next, Stock argues there is insubstantial evidence he and Deitrick did not have permission or authority to enter the room.  While there was evidence presented to the jury that Bryant and Johnson opened the door to Deitrick, they did not open it for Stock, who was hiding at the time that they looked through the peep-hole and who did not speak so as not to alert either of them to his presence. Bryant and Johnson also both explicitly testified that they would not have let Stock into the motel room had they known that he was there.  *See State v. Walker*, 600 N.W.2d 606, 608–09 (Iowa 1999) (discussing the privilege defense to burglary). On top of all of that, Stock arrived with a billy club with nails on the end and with his face covered by a mask and with his hood up, demanding money.  His actions of concealing his presence and arriving armed could be viewed by a jury as demonstrating that he anticipated a non-peaceful welcome from Bryant or Johnson, and therefore he did not have permission or authority to enter.

**2. First-Degree Robbery.**  To find Stock guilty of first-degree robbery, the jury had to conclude:

> 1. On or about the 2nd day of February, 2022, in Scott County, Iowa, [Deitrick] and/or [Stock] had the specific intent to commit a theft.
> 2. In carrying out their intention or to assist them in escaping from the scene, with or without the stolen property, the defendant or defendants:
> a. Committed an assault on [Johnson] and in committing the assault the defendants used or displayed a dangerous weapon in connection with the assault; or

b. Threatened [Johnson] with, or purposely put [Johnson] in fear of immediate serious injury.
3. The defendant or defendants:
a. Purposely inflicted or attempted to inflict a serious injury on [Johnson] or
b. Was armed with a dangerous weapon.

Stock claims the State failed to introduce substantial evidence he committed an assault while using or displaying a dangerous weapon or threatened Johnson to enable their escape from the scene.[4] But the jury did not have to make this specific finding to conclude Stock was guilty; it could have concluded Stock committed an assault while using or displaying a dangerous weapon or threatened Johnson *to carry out the theft*. Because we are required to affirm if at least one of the alternatives presented to the jury is supported by substantial evidence, *see* Iowa Code § 814.28, and because Stock waived any argument regarding whether substantial evidence supports the "in carrying out their intention element," *see State v. Adney*, 639 N.W.2d 246, 250 (Iowa Ct. App. 2001), we affirm on that ground without considering the argument Stock actually raised. *See State v. Triplett*, No. 19-1902, 2021 WL 3074475, at *1–2 (Iowa Ct. App. July 21, 2021) (recognizing "[f]ailure to challenge one of the alternatives is tantamount to conceding substantial evidence supports that theory" and refusing to consider the ground actually challenged because "the effort would be futile").

**3. Going Armed with Intent.** Stock was guilty of going armed with intent if the State proved:

1. On or about the 2nd day of February, 2022, in Scott County, Iowa, [Stock] was armed with an object or weapon.

---

[4] Stock challenges the evidence supporting the element regarding specific intent to commit a theft again; for the reasons already given, we reject this claim.

> 2. The object or weapon was a dangerous weapon as defined by Instruction No. 31.
> 3. The defendant was armed with the specific intent to use the object or weapon against another person.
> 4. While armed with the object or weapon, the defendant moved from one place to another.

Stock contends the State failed to introduce substantial evidence he had the bat with the specific intent to use the bat against someone.[5]

Stock brought with him a wooden bat that had been modified by adding nails to it; he arrived at the motel room wearing a hood and a bandana over his face. After initially concealing himself from the occupants, he demanded money from them while holding the weapon. Looking at the evidence in the light most favorable to the verdict, we have little trouble concluding a reasonable jury could infer that Stock brought the weapon with the intent to use it against the men he believed were withholding money from him. *See State v. Salkil*, 441 N.W.2d 386, 388 (Iowa Ct. App. 1989) ("It is not required that intent be proved by direct evidence; intent is seldom so proved. 'Given that criminal intent is rarely susceptible to direct proof, the fact-finder may determine intent by such reasonable inference and deduction as may be drawn from facts proved by evidence in accordance with common experience and observation.'" (citations omitted)).

---

[5] In passing, Stock asserts that the State failed to show that his use of the bat was without justification. But as the State recognizes on appeal, Stock never asked that the jury be instructed on justification. Because the jury was not instructed to consider whether Stock was justified, and because the instructions as given are the law of the case, we do not reach the merits of Stock's claim. *See, e.g.*, *State v. Starr*, No. 22-0277, 2023 WL 5092065, at *2 (Iowa Ct. App. Aug. 9, 2023). Plus, Stock failed to develop an argument such that it warrants appellate review. *See, e.g.*, *Cabrera v. Linxwiler*, No. 21-1229, 2022 WL 1100288, at *2 n.5 (Iowa Ct. App. Apr. 13, 2022) (concluding a challenge "is not sufficiently developed for our consideration").

**4. Identity.** Stock claims that each of his convictions is not supported by substantial evidence because the State failed to prove he was one of the people involved at the motel. But as Stock concedes in his appellate brief, "Both Bryant and Johnson were able to identify Stock as one of the two individuals at their motel room on February 2, 2022." So, Stock's argument amounts to a credibility determination, which is not our role on appeal when evaluating the sufficiency of the evidence. *See State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012) (holding that in reaching its verdict, the jury is "free to reject certain evidence, and credit other evidence" (citation omitted)); *State v. Hutchison*, 721 N.W.2d 776, 780 (Iowa 2006) (detailing that in reviewing, "we do not . . . pass upon the credibility of witnesses"). Plus, Stock makes no challenge to identification based on the motel surveillance footage, which the jurors received as an admitted exhibit. Substantial evidence supported the identification of Stock.

**B. Motion for a Mistrial.**

Lastly, Stock asserts that the district court should have granted his motion for a mistrial after a witness testified that Stock was in jail. In making this assertion, Stock relies on Iowa Rule of Evidence 5.404(b) (2022), which provides that evidence of any "crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." He also relies on the court's ruling on his pre-trial motion in limine excluding any evidence of his prior convictions. The State responds that error was not preserved for our review because no objection was made at the time of Bryant's testimony. Instead, Stock did not object or move for mistrial until after cross-examination was completed and the witness was excused.

Here, the district court was deprived of the opportunity to resolve any alleged error since the objection came after the witness testified and was discharged, so error was not preserved. *See State v. Jirak*, 491 N.W.2d 794, 796 (Iowa Ct. App. 1992) ("[A] mistrial motion must be made when the grounds therefor first become apparent."); *State v. Brown*, No. 14-0667, 2015 WL 5577971, at *4 (Iowa Ct. App. Sept. 23, 2015) ("No motion for mistrial was made until the witness's testimony had concluded entirely. Accordingly, error was not preserved."). Because error was not preserved, we do not address this argument further.

## IV. Conclusion.

We find that there was substantial evidence supporting each of Stock's convictions and Stock failed to preserve error on his motion for a mistrial claim. For these reasons, we affirm.

**AFFIRMED.**